*RECOMMENDED FOR PARTIAL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0130P (6th Cir.)
File Name: 02a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICHARD COOEY,
    *Petitioner-Appellant,*

    *v.*

No. 98-3050

RALPH COYLE, Warden,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 96-00797—Sam H. Bell, District Judge.

Argued: January 30, 2002

Decided and Filed: April 16, 2002

Before: SUHRHEINRICH, SILER, and GILMAN, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Margery Malkin Koosed, South Euclid, Ohio, for
Appellant. Michael L. Collyer, OFFICE OF THE
ATTORNEY GENERAL OF OHIO, CAPITAL CRIMES
SECTION, Cleveland, Ohio, for Appellee. **ON BRIEF:**
Margery Malkin Koosed, South Euclid, Ohio, Nathan A. Ray,
Akron, Ohio, for Appellant. Michael L. Collyer, OFFICE OF

THE ATTORNEY GENERAL OF OHIO, CAPITAL CRIMES SECTION, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

SUHRHEINRICH, Circuit Judge.  This is an appeal from a judgment denying Petitioner Richard Cooey's petition for writ of habeas corpus under 28 U.S.C. § 2254.  We determine that Cooey is entitled to a certificate of appealability on only two of his claims.  We also decide on the merits that Cooey is not entitled to relief as to either issue.

## I.  Background

### A.  Facts

On the night of August 31, 1996, Appellant, Richard Wade Cooey II, on leave from the army, and two of his friends, Clint Dickens and Kenneth Horonetz, threw a large chunk of concrete over the side of a bridge just as Wendy Offredo and Dawn McCreery were passing below along Interstate 77 in Akron, Ohio.  The concrete hit Wendy's car, forcing her to pull over.  The men went down and offered a ride so the women could call for help.  After driving them to a nearby mall to use a telephone, the men took the women to a field where they were raped, beaten, and murdered by Cooey and Dickens.  The men also stole Wendy's jewelry.

The bodies were found on September 1.  The Summit County Coroner concluded that Wendy and Dawn had died of multiple blows to the head--Wendy received at least three blows and Dawn at least eleven--with strangulation also contributing to Wendy's death.  He also concluded that both women had oral and vaginal intercourse before death.

## B. Procedural History

Cooey was indicted on September 8, 1986, with two counts of aggravated murder in violation of Ohio Rev. Code §§ 2903.01(A) and 2903.01(B), including three specifications of aggravating circumstances in violation of Ohio Rev. Code §§ 2929.04(A)(3), 2929.04(A)(5), and 2929.04(A)(7). Cooey was also charged with two counts of kidnapping with the purpose of engaging in nonconsensual sexual activity, in violation of Ohio Revised Code § 2907.02(A); and two counts of aggravated robbery, in violation of Ohio Rev. Code §§ 2911.01(A)(1) and 2911.01(A)(2). Lastly, he was charged with one count of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(2), for dropping the chunk of concrete on Wendy's car.

Cooey entered a not guilty plea. Cooey waived his right to trial by jury and was tried by a three-judge panel according to Ohio Rev. Code §§2945.05 and 2945.06. The panel found Cooey guilty of all counts and specifications.

On December 5, 1986, the panel conducted a mitigation hearing, pursuant to Ohio Rev. Code § 2929.03(C)(2)(b). The panel returned a unanimous verdict, finding beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors, and recommended the death penalty. The two aggravated murders under § 2903.01(A) were merged into the two convictions under Ohio Rev. Code § 2903.01(B). Cooey was sentenced to death for each murder and to imprisonment for the seven other felonies.

Cooey timely appealed, setting forth thirteen assignments of error. The Ohio Court of Appeals upheld Cooey's conviction and sentence on December 23, 1987. *See State v. Cooey*, 1987 WL 31921 (Ohio Ct. App. Dec. 23, 1987). Cooey appealed to the Ohio Supreme Court, raising thirty-three issues. On October 11, 1989, the Ohio Supreme Court affirmed Cooey's conviction and death sentence. *See State v. Cooey*, 544 N.E.2d 895 (Ohio 1989). The United States Supreme Court denied certiorari on April 1, 1991.

Cooey then sought state post-conviction relief. He filed a petitition to vacate or set aside his sentence pursuant to Ohio Rev. Code § 2953.2, in the Court of Common Pleas of Summit County, Ohio, raising sixty-five claims for relief. On July 31, 1992, the Summit County Common Pleas Court denied Cooey's petition. *See State v. Cooey*, No. 86-09-1109A (Com. Pl. Summit Cty. July 21, 1992). Cooey appealed, raising eight assignments of error. *State v. Cooey*, Nos. 15895, 15966, 1991 WL 201009 (Ohio Ct. App. May 25, 1994). The Ohio Court of Appeals found that most of Cooey's claims were barred by res judicata. *Id.* It did, however, address Cooey's claims of ineffective assistance of counsel on the merits. Cooey appealed to the Ohio Supreme Court, but that court declined to take jurisdiction of Cooey's post-conviction appeal.

On November 3, 1994, Cooey filed an application to reopen his direct appeal. Cooey claimed that his appellate counsel was ineffective and asserted fifty-eight claims that appellate counsel failed to raise. On January 16, 1995, the Ohio Court of Appeals denied his request to reopen his direct appeal, finding that Cooey had procedurally defaulted these claims because he had failed to establish good cause for not filing the application to reopen within ninety days from the effective date of Ohio App. R. 26(B), July 1, 1993. The Ohio Supreme Court affirmed the judgment of the Ohio Court of Appeals. *See State v. Cooey*, 653 N.E.2d 252 (Ohio 1995). Cooey's motion for reconsideration was also denied.

Cooey filed this petition for writ of habeas corpus in October 1996. Among other grounds for relief, Cooey claimed that he was denied the effective assistance of both trial and appellate counsel, and that he was denied a meaningful opportunity to litigate his federal claims in the state courts.

On September 4, 1997, the district court denied the writ. *See Cooey v. Anderson*, 988 F. Supp. 1066 (N.D. Ohio 1997). Under the procedure that pre-dated the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the district

either phase of his trial by his trial lawyers' alleged failure.

*Id.* at *11. Again, Cooey has not shown that the Ohio Court of Appeals unreasonably applied *Strickland*.

### d.  Failure to Object to Prosecutorial Misconduct

The Ohio Court of Appeals ruled as follows:

The properly admitted evidence against defendant was so overwhelming that, to the extent defendant's trial lawyers failed to object to irrelevant evidence or prosecutorial misconduct, there was not a "reasonable probability" that defendant was prejudiced by that failure.

*Id.* at *13. Cooey has simply not demonstrated how this ruling is an unreasonable application of *Strickland*.

### IV.  Conclusion

For all of the foregoing reasons articulated in this opinion and accompanying unpublished appendix, we conclude that Cooey is not entitled to habeas relief. **SO ORDERED.**

suffered actual prejudice. In short, Cooey has not shown a violation of *Strickland*.

Cooey asserts that counsel should have contacted social workers to assist in presenting mitigating evidence, especially since the strongest factors in favor of mitigation were Cooey's youth and substance abuse. The Ohio Court of Appeals held that Cooey "failed to proffer any exculpatory evidence in support of his petition that was not presented at defendant's trial and arguably would have been if the trial court had appointed a social worker to assist defendant. Accordingly, he did not demonstrate a 'reasonable probability' that he was prejudiced by his trial lawyers' failure to request assistance of a social worker." *Id.* at *14.

Cooey has not shown that the Ohio Court of Appeals's ruling is contrary to, or an unreasonable application of *Strickland*.

Third, Cooey contends that trial counsel failed to obtain a pharmacologist and/or toxicologist to assist them in preparing Cooey's case pursuant to Ohio Rev. Code § 2929.024. The Ohio Court of Appeals ruled as follows:

> Trial counsel failed to request the appointment of a pharmacologist and/or toxicologist to give opinions as to the effect of chemicals in defendant's system. The Supreme Court ruled on direct review that expert testimony about defendant's alleged diminished capacity was properly excluded from the guilt/innocence phase of his trial. *Cooey II*, at 26. Although the psychologist whose affidavit was attached to defendant's petition to vacate or set aside sentence opined that a pharmacologist and/or toxicologist could have presented the three judge panel "a more detailed and complete understanding of the impact" of drugs on defendant's cognitive and emotional functioning," neither the psychologist nor defendant's counsel has explained how that "more detailed and complete understanding" would have been exculpatory. Accordingly, defendant did not demonstrate a "reasonable probability" that he was prejudiced during

court then issued a certificate of probable cause for appeal. Petitioner then filed a notice of appeal.

On October 12, 2000, this Court entered an order ruling that the AEDPA applies to this case, and that the district court's issuance of a certificate of probable cause under the pre-AEDPA version of 28 U.S.C. § 2253(c) was ineffective. We elected to treat Cooey's brief as an application for a certificate of appealability. After expressing our tentative view that Cooey had not made a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2) & (3) with respect to any of the issues raised, we directed Cooey to show cause why we should not deny the application for a certificate. Attached to our order was an appendix summarizing our tentative view as to each issue.

The parties filed their respective briefs responding to the show cause order, and the matter was argued on January 30, 2002.

## II.  Application for Certificate of Appealability

Under the AEDPA, an appeal from the denial of a writ of habeas corpus may not be taken unless a circuit justice or judge issues a certificate of appealability. A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). We may also reject an issue for appeal if the procedural default doctrine applies. *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000). However, this determination has two components, "one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id.* at 483. When the district court denies a habeas petition on procedural grounds alone, the certificate of appealability should issue when the applicant "shows, at least, that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

Cooey raises the following issues in his brief as broadly stated in seven categories, with numerous subissues, and asks us to grant a certificate of appealability as to the following:

I.    THE STANDARDS CREATED BY THE UNITED STATES SUPREME COURT AND THE SIXTH CIRCUIT COURT OF APPEALS MANDATED AN EVIDENTIARY HEARING IN MR. COOEY'S CASE.

II.   THE IMPROPER WEIGHING OF INVALID CIRCUMSTANCES, AND INADEQUATE CONSIDERATION OF MITIGATING FACTORS, REQUIRE THAT MR. COOEY'S DEATH SENTENCE BE VACATED.

III.  THE IMPROPER CONSIDERATION OF INADMISSIBLE AND PREJUDICIAL MATERIAL BY THE TRIAL COURT REQUIRES THAT MR. COOEY'S DEATH SENTENCE BE VACATED.

IV.   THE DISTRICT COURT ERRED WHEN IT FOUND THAT THE ERRORS WHICH OCCURRED AT THE TRIAL PHASE DID NOT DENY [MR. COOEY] HIS RIGHT TO A FAIR TRIAL.

V.    THE DISTRICT COURT ERRED IN DETERMINING THAT PETITIONER COOEY HAD PROCEDURALLY DEFAULTED ON HIS CLAIMS.

VI.   MR. COOEY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO PREVENT THE IMPERMISSIBLE CUMULATION OF INVALID AGGRAVATING FACTORS AND OTHER PREJUDICIAL INFLUENCES ON THE TRIAL AND SENTENCING DECISIONS; AND

indicated by the date stamp, for the journal of a court of record imports absolute verity absent clear and convincing evidence to the contrary." *Id.* at 909-10.    Then, the Ohio Court of Appeals found that:

> The Ohio Supreme Court held that there was a signed indictment filed in the trial court in this case. *Cooey II*, at 30.    Accordingly, there was not a "reasonable probability" that defendant was harmed by his trial lawyers' failure to raise this claim.

*State v. Cooey*, 1994 WL 201009, at *14.    As an initial matter, the Ohio Supreme Court's fact finding is entitled to deference. Furthermore, Cooey has not demonstrated how the Ohio Court of Appeals' ruling is an unreasonable application of *Strickland's* prejudice component.

### b.  Presentence Report

Cooey complains that his trial lawyers were ineffective because they requested a presentence report. According to Cooey, the request was problematic because the presentence report contained the police captain's sentence recommendation as well as prior uncharged criminal misconduct. The Ohio Court of Appeals ruled to the contrary. *Id.* at *13.

The Ohio court reasonably applied *Strickland*. Indeed, Cooey does not even make a stab at showing how this decision is contrary to federal law.

### c.  Preparation for Mitigation

Cooey maintains that counsel were ineffective in failing to prepare for mitigation. More precisely, Cooey complains that counsel requested a presentence report a mere ten days prior to the mitigation hearing. This claim was not raised in the state courts and is therefore defaulted. Even if we reviewed the claim, and even if this alleged deficiency constituted ineffective assistance, Cooey has not explained how he

*State v. Cooey*, 1994 WL 201009, at *12. Again, the state appellate court's finding that Cooey had not demonstrated prejudice under *Strickland*'s second prong was reasonable. This claim is utterly without merit.

### iii. Gruesome Slides

The Ohio Court of Appeals held that:

The Ohio Supreme Court ruled that, although the photographs were gruesome, they were highly probative. *Cooey II,* at 36. The Supreme Court further ruled that the trial court committed harmless error in admitting four of the photographs that were duplicative. *Id.* There is no "reasonable probability" that defendant was prejudiced by his trial lawyers' failure to object to the admissibility of the photographs at issue.

*Id.* at *14.

Again, Cooey has not shown how the Ohio Court of Appeals' decision is an unreasonable application of *Strickland's* prejudice prong. More fundamentally, this fails to state a constitutional claim, *see Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (holding that the claim that a gruesome photo of decedent was erroneously admitted did not raise "the spectre of fundamental fairness such as to violate federal due process of law"), and therefore is not cognizable on habeas.

### iv. Unsigned Indictment

Finally, Cooey argues that trial counsel failed to object to the use of an unsigned indictment against him. According to Cooey, the indictment was invalid because it was not signed by the foreman of the jury. First of all, the Ohio Supreme Court found that, although it was not originally part of the appellate record, the signed indictment was subsequently sent to the high court by the trial court. *State v. Cooey*, 544 N.E.2d at 909. Thus, "that it was journalized at all requires us to accept it as genuine and as having been filed at the time

FAILED TO REASONABLY INVESTIGATE MITIGATING FACTORS.

VII.　OHIO'S DEATH PENALTY LAW IS UNCONSTITUTIONAL.

(Petitioner's Br. at 2; *see also id.* at ii-ix).

We have reviewed the parties' most recent round of briefs, and heard their arguments, and conclude that a certificate of appealability should issue as to only the two following issues:

I.　Whether the Ohio Supreme Court failed on direct appeal to correct the trial court's errors in weighing the aggravating and mitigating factors; and

II.　Whether Cooey's trial counsel provided ineffective assistance.

As for the remaining issues raised, we hold that none meets the standards for granting a certificate of appealability, for the reasons originally articulated in the appendix to our order dated October 12, 2000, which we reincorporate and attach as an unpublished appendix to this opinion.

### III.　Petition

This Court reviews a district court's decision in a habeas proceeding de novo. *Staley v. Jones*, 239 F.3d 769, 775 (6th Cir. 2001).

Under the AEDPA, a federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1) (1994 & Supp. VII), or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.* § 2254(d)(2). A state court's legal decision is "contrary to" clearly established

federal law under § 2254(d)(1) "if the court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when "the state court identified the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Under this standard, a state decision is not unreasonable simply because the federal court concludes that the state decision is erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410-12. Factual findings by state courts are presumed correct. 28 U.S.C. § 2254(e)(1).

## A.   Reweighing

Cooey argues that the Ohio Supreme Court's reweighing of the aggravating circumstances and mitigating factors leading to his death sentence was erroneous.[1]

In *Clemons v. Mississippi*, 494 U.S. 738 (1990), the Supreme Court confirmed that the federal Constitution does not prohibit reweighing or harmless analysis as a cure for weighing errors. Although not required to do so, once it

---

[1] Under Ohio Rev. Code § 2929.05(A), the Ohio appellate courts are required to "independently weigh" the aggravating circumstances against the mitigating factors:

> The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they *shall review and independently weigh* all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate.

Ohio Rev. Code § 2929.05(A) (emphasis added).

### a.   Failure to Object to Constitutionally Infirm Procedures

Cooey claims that counsel were ineffective regarding jury waiver, selection of the three-judge panel, introduction of gruesome slides, and the indictment.

### i.   Jury Waiver

Cooey claims that his trial counsel failed to insure that he knew that he was waiving his fundamental right to a jury trial. However, as the Ohio Court of Appeals found, Cooey failed to present any evidence supporting his assertion. *State v. Cooey*, 1994 WL 201009, at *13, *14. *See also State v. Kapper*, 448 N.E.2d 823, 826 (Ohio 1983). In other words, the court held implicitly that Cooey defaulted this claim in the state postconviction trial proceeding. By failing to submit evidence, Cooey barred himself from developing the claim further, and is not now entitled to an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2)(A)(ii).

The court also held that Cooey "failed to show that his trial lawyers' performance fell below an objective standard of reasonable representation." *State v. Cooey*, 1994 WL 201009, at *14. Cooey makes no attempt to show how this ruling is contrary to, or an unreasonable application of, Supreme Court precedent. It is meritless.

### ii.   Three-Judge Panel

Cooey complains that trial counsel should have objected to the method of empaneling the three judges. The Ohio Court of Appeals held:

Defendant has failed to indicate how the makeup of the three judge panel had an adverse impact on him. Accordingly, defendant did not demonstrate a "reasonable probability" that he was prejudiced by his trial lawyers' alleged failure.

Cooey's assigned error of ineffective assistance of counsel based on counsel's failure to object, the Ohio Court of Appeals held:

> The Ohio Supreme Court reviewed this claim and found that the failure of the trial court to merge the aggravating circumstances at issue was not plain error. This Court concludes that there also was not a 'reasonable probability' that defendant was prejudiced by his trial lawyers' failure in regard to the merger of aggravating circumstances.

> *State v. Cooey*, 1994 WL 2010009, at * 15.

As the district court held, "the evidence confirming the aggravating circumstances of Cooey's offenses is overwhelming." *Cooey v. Anderson*, 988 F. Supp. at 1088. More importantly, the Ohio Supreme Court corrected the trial court's error in failing to merge the aggravating circumstances, and upon independent reweighing, still concluded that "the properly admitted evidence overwhelmingly proves that the aggravating circumstances outweigh, beyond a reasonable doubt, the mitigating factors." *State v. Cooey*, 544 N.E.2d at 919.

The Ohio Court of Appeals ruled on Cooey's postconviction petition by holding that there was not a "reasonable probability" that Cooey was prejudiced by his trial lawyers' failure to argue that the aggravating circumstances should not have been merged. Cooey has not contended, and cannot establish, how this conclusion is at odds with *Strickland*. *See* 28 U.S.C. § 2254(d).

## 2. Other Failures

Cooey also alleges that trial counsel were deficient for several other reasons, which we address in order.

elects to reweigh, the state appellate court must "give each defendant an individualized and reliable sentencing determination based on the defendant's circumstances, his background and crime." *Id.* at 749.

The three-judge panel convicted Cooey of four aggravated murder counts, two counts relating to victim Wendy Offredo, and two relating to victim Dawn McCreery. Each contained three capital specifications. For each victim, Cooey was charged with purposely killing her with prior calculation and design (Ohio Rev. Code § 2903.01(A), and with purposely killing her in the course of an enumerated felony, being kidnapping, rape, and aggravated robbery (Ohio Rev. Code § 2903.01(B)). The same three capital specifications were attached to each count:

(1) the murder was committed to escape detection for other crimes (Ohio Rev. Code § 2929.04(A)(3));

(2) the murder was part of a course of conduct that involved the purposeful killing of two or more persons (Ohio Rev. Code § 2929.04(A)(5)); and

(3) the murder was committed while committing or attempting to commit or fleeing immediately after committing or attempting to commit rape and/or kidnapping and/or aggravated robbery and Cooey was a principal offender in the commission of the aggravated murder and/or the aggravated murder was committed with prior calculation and design. (Ohio Rev. Code § 2929.04(A)(7)).

The three-judge panel found Cooey guilty of all counts and all specifications. However, before sentencing, the court made the State elect which count for each victim the court would sentence upon. The State elected the felony murder count for each victim. The three-judge panel also found that the "course of conduct" specification for each count was duplicative, so it considered only one such specification.

In its review, the Ohio Supreme Court initially determined that the trial court had erred in several respects in its weighing. First, the Ohio Supreme Court concluded that the trial court erred in combining and collectively considering the aggravating circumstances of both murders:

> Cooey argues that the trial court erred in combining the aggravating circumstances related to *both* murders, and weighing all of them collectively against the mitigating factors. We agree. As Cooey states, each murder was a separate offense subject to a separate penalty. By adding together the aggravating circumstances of both murders in the penalty phase, the trial court denied Cooey that "consideration of . . . the circumstances of the *particular* offense . . ." that is "a constitutionally indispensable part of the process of inflicting the penalty of death." (Emphasis added.) *Woodson v. North Carolina* (1976), 428 U.S. 280, 96 S. Ct. 2978, 2991, 49 L.Ed.2d 944 (plurality opinion).

> Therefore, when a capital defendant is convicted of more than one count of aggravated murder, the penalty for each individual count must be assessed separately. Only the aggravating circumstances related to a given count may be considered in assessing the penalty for that count.

> . . .

> We do not think it is clear that the trial court's error determined the result. Indeed, we conclude that the aggravating circumstances of each murder, weighed separately, outweigh the mitigating factors. Thus, although the trial court erred, its error was not plain error, and therefore not reversible error in light of Cooey's failure to raise it in the court of appeals.

*State v. Cooey*, 544 N.E.2d at 916-17.

The Ohio Supreme Court also determined that certain specifications should have been merged:

---

## B.   Ineffective Assistance of Trial Counsel

Cooey also argues that his trial counsel were ineffective for various reasons. To show that counsel was constitutionally ineffective, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and also that counsel's deficiencies prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In other words, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In *Lockhart v. Fretwell*, 506 U.S. 364 (1993), the Supreme Court explained that "[t]he prejudice component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372. The Court further explained that "unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*

## 1.   Impermissible Cumulation of Aggravating Factors

First, Cooey claims that his trial counsel failed to prevent or redress the impermissible cumulation of aggravating factors at the sentencing phase. Specifically, Cooey asserts that trial counsel were constitutionally ineffective for failing to object to the trial court's separate weighing of duplicative aggravating factors, in contravention of the clear mandate of the Ohio Supreme Court in *State v. Jenkins*, 473 N.E.2d 264 (Ohio 1984) (syllabus, ¶ 5).

The Ohio Supreme Court acknowledged the underlying weighing error, but concluded that "Cooey did not raise this error in the court of appeals, and we find it far from clear that it affected the panel's verdict. We therefore cannot hold it plain error." *State v. Cooey*, 544 N.E.2d at 917. As to

erroneously included in its analysis. *Id.* at 41-42, 544 N.E.2d 895. Second, it did not reach its decision merely on the existence of a single aggravating circumstance. Instead, it noted the specific nature of the crimes at issue, the use of deceit in committing those crimes, and the amount of force employed by the perpetrator. *Id.* ("[The mitigating factors] are outweighed beyond any reasonable doubt by the aggravating circumstances of rape and kidnaping. Cooey used deceit to lure Wendy and Dawn into his car, drove them to a deserted area, then took what he wanted from them by force. He beat them repeatedly with a nightstick, then tried to make sure Wendy was dead by strangling her."). Finally, the Court provided a thorough discussion of and gave careful consideration to all mitigating factors relevant to Cooey's sentence. In sum, the Ohio Supreme Court acted properly when, pursuant to § 2929.05, it elected to reweigh the aggravating circumstances and mitigating factors of this case.

*Cooey v. Anderson*, 988 F. Supp. at 1097-98 (footnote omitted). Thus, it is simply baseless to suggest, as Cooey does in his brief at 46-47, that the Ohio Supreme Court's reweighing was merely conclusory and insufficient under constitutional standards. The Ohio Supreme Court's decision was not "contrary to," nor did it involve[ ] an unreasonable application of, clearly established Federal law." The Ohio Supreme Court was properly allowed to reweigh under *Clemons*, and considered all the factors *Clemons* set out as part of the reweighing analysis. And even if we thought that the Ohio Supreme Court's application of *Clemons* was incorrect, which we do not, it was certainly not an unreasonable application of *Clemons*. Nor can it be said that the Ohio Supreme Court's holding was based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings. *See* 28 U.S.C. § 2254(d)(1) & (2). In short, the "reweighing issue" provides no basis upon which to grant the writ.

[Cooey] also argues that, under the facts in this case, the specifications should have been merged because they arose from the same acts and were committed with the same animus. See *Jenkins, supra,* . . . syllabus. We agree. The specifications for which Cooey was trying to escape accountability when he killed Wendy and Dawn (R.C. 2929.04[A][3]) are the same as those that support his convictions of the felony murder specifications. (R.C. 2929.04[A][7]). Thus, the "escaping accountability" specifications lack "a significance independent of the other" specifications. *Logan, supra,* . . . .

Cooey did not raise this error in the court of appeals, and we find it far from clear that it affected the panel's verdict. We therefore cannot hold it plain error.

*State v. Cooey*, 544 N.E.2d at 917. The Ohio Supreme Court also found that the panel should not have considered mitigating factors not raised by Cooey:

Cooey correctly asserts that the trial court erred by considering all of the mitigating factors set forth in R.C. 2929.04(B) even though Cooey did not raise some of them. See *State v. DePew,* . . . . However, the sentencing opinion lists what the court understood to be the aggravating circumstances, and the absence of mitigating factors is not among them. Cf. *State v. Broom, supra.* . . . We conclude that the absence of mitigating factors was not impermissibly transformed into an aggravating circumstance.

*Id.* The Ohio Supreme Court further held that the trial court had misconstrued the standard for legal insanity under Ohio Rev. Code § 2929.04(B):

Cooey argues that the trial court and the court of appeals misapplied the standard for legal insanity to the mitigating factor created by R.C. 2929.04(B)(3). We agree. The mitigating factor existed if Cooey ". . . lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the

requirements of the law . . . ." The question was not, as the trial court thought, whether Cooey completely lacked capacity to do so. *Cf. Lawrence, supra* . . . .

. . . Of course, under either standard, it must be demonstrated that such lack of capacity resulted from a mental disease or defect. . . . Since the trial court found that Cooey did not have a mental disease or defect, this mitigating factor would not have applied even under the correct standard.

*Id.* at 918.

The Ohio Supreme Court then turned to the question of whether the aggravating circumstances outweighed the mitigating factors, "as part of our statutorily mandated review." Specifically, the Ohio Supreme Court considered evidence relating to Cooey's physical and mental history. First, it noted the testimony of Dr. James W. Siddall, a clinical psychologist, who had interviewed Cooey and performed a standard battery of psychological tests on him. Dr. Siddall determined that Cooey exhibited a "mental disorder" consisting of a "conduct disorder" and a pattern of substance abuse. *Id.* at 919. The Ohio Supreme Court noted that Siddall "testified that a 'mental disorder' is not necessarily a 'mental illness,' but that it probably 'would affect judgment as well as behavioral control.'" *Id.* The Court also observed that Siddall testified that Cooey's history of child abuse was significant, a fact which Cooey's mother further attested to. *Id.* The Court ultimately concluded that Cooey's mental disorder was entitled to "little legal weight," because his mental disorder "consisted of the ingestion of drugs in combination with his 'conduct disorder,'" and Dr. Siddall's "definition of 'conduct disorder' as a pattern of violating other people's rights could apply to virtually every criminal." *Id.*

The Ohio Supreme Court also took into account Cooey's youth, subject to his military status, and his lack of previous criminal convictions:

Cooey's youth is entitled to some weight, but his military status makes it reasonable to expect more maturity from him than one might otherwise expect of a nineteen-year-old. His history as a severely abused child is certainly relevant for whatever it may have contributed to his mental problems.

Although the record shows that Cooey has had contact with juvenile authorities, the record does not demonstrate any previous criminal convictions or delinquency adjudications. This factor is entitled to some weight in mitigation.

*Id.* Nevertheless, the Ohio Supreme Court ultimately concluded as follows:

These factors tend to suggest that Cooey may have been less responsible for his acts than were most people. However, they are outweighed beyond any reasonable doubt by the aggravating circumstances of rape and kidnapping. Cooey used deceit to lure Wendy and Dawn into his car, drove them to a deserted area, then took what he wanted from them by force. He beat them repeatedly with a nightstick, then tried to make sure Wendy was dead by strangling her.

We conclude that the properly admitted evidence overwhelmingly proves that the aggravating circumstances outweigh, beyond a reasonable doubt, the mitigating factors.

*Id.*

As the foregoing illustrates, the Ohio Supreme Court followed the dictates of *Clemons* in that it gave individualized consideration to Cooey's circumstances, his background, and the crime. As the district court ruled:

In this case, the Supreme Court of Ohio committed no such error. First, in its decision, the Court gave no consideration to those factors which the trial court had